## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **RAVEN TORRES TORRES**<br>Plaintiff | **CIVIL NO.** |
| v. | **PLAINTIFF DEMAND<br>TRIAL BY JURY** |
| **ROBERTO REVOL MARTÍNEZ, UPDATE<br>MUSIC CORP., JANE DOE, INSURANCE<br>COMPANY ABC, ABC CORPORATION, XYZ<br>CORPORATION, JOHN DOE & RICHARD DOE**<br>Defendants | **ANNULMENT OF<br>CONTRACT; DAMAGES** |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW**, Raven Torres Torres, represented by the undersigned attorney, and very respectfully STATES, ALLEGES and PRAYS as follows:

## JURISDICTION AND VENUE

1. This is an action between parties of diverse citizenship and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), therefore, this Honorable Court has jurisdiction over this action under 28 U.S.C. § 1332 (Diversity of Citizenship).

2. Pursuant to 28 U.S.C. §1367 this Honorable Court also has supplemental jurisdiction over all causes of action arising under the Laws and Constitution of Puerto Rico.

3. Venue is proper in this district court pursuant to 28 U.S.C. § 1391(b) and (c), and/or § 1400(a) because Defendants transact business in the Commonwealth of Puerto Rico, the contracts at issue were negotiated and executed in Puerto Rico and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## THE PARTIES

4. The Plaintiff, Raven Torres Torres, professionally known as "Reyven" (hereinafter "Plaintiff"), is a songwriter of legal age and a resident of Florida, United States. The Plaintiff's telephone number is 787-217-6152. Due to indirect and direct threats from Defendant Roberto Revol Martínez Lebrón, the Plaintiff respectfully requests that his physical address remain undisclosed for reasons of personal safety. Notifications may be directed to his undersigned counsel at the address of record.

5. Defendant, Roberto Revol Martínez Lebrón, professionally known as "Revol" (hereinafter "Defendant"), is a music producer of legal age and a resident of Urb. Monte Verde Real, 11 Calle Vereda, San Juan, PR 00926. The defendant's telephone number is 939-395-0710.

6. Defendant, Update Music Corp. (hereinafter "Update Music), is a corporation and/or limited liability company organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business in San Juan, Puerto Rico. This corporation does business in this judicial district and in which co-defendant Roberto R. Martínez Lebrón owns and/or maintains a substantial ownership interest, regardless of whose name such interests have been registered.

7. Upon information and belief, Defendant Roberto Revol Martínez Lebrón is a representative of Update Music. His conjugal partner, whose legal name is presently unknown to the Plaintiff and identified here as "Jane Doe", is also a resident of Puerto Rico. Their conjugal partnership, if any, is organized under the laws of Puerto Rico.

8. Defendants, Insurance Companies "A", "B" and "C" are legal entities whose identities are currently unknown to the Plaintiff. These entities are organized under the laws of Puerto

Rico or under the laws of any state, with their main offices located in Puerto Rico. They were authorized by the Puerto Rico Insurance Commissioner to issue insurance policies. At the time of the occurrence of the acts and/or omissions detailed below, Insurance Companies "A", "B" and "C" had issued insurance policies covering one or more Defendants for claims as those presented in this case. These insurance companies are believed to be jointly and severally liable, along with their insured clients, for any negligence, wrongful acts, or liability incurred that caused the damages claimed by the Plaintiff in this action.

9.  Defendants, identified as "ABC Corporation" and "XYZ Corporation", are additional legal entities whose exact identities are presently unknown. Whether operating as corporations or limited liability companies, under the laws of Puerto Rico, these entities may be indispensable parties due to their potential involvement or the impact of the claims asserted in this case.

10. Defendants "John Doe" and "Richard Roe" are identified by fictitious names to toll any applicable statute of limitations. Upon obtaining sufficient information to ascertain their identities, we will seek leave to amend this Complaint to include their proper names and request the issuance of summons, as  necessary.

## <u>FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION</u>

11. On September 24, 2018, Raven Torres Torres signed publishing, management and recording contracts with Mr. Martínez Lebrón, under his company Update Music.

12. Beginning in the first week following the signing of the Contracts, Plaintiff observed that the Defendant exhibited erratic behavior, including frequent mood swings, which caused

significant discomfort to the Plaintiff. Defendant's comments and actions are further alleged to have included threats directed towards the Plaintiff.

13. Over time, Plaintiff asserts that Defendant Martínez Lebrón's behavior worsened. Plaintiff further alleges that Defendant made inappropriate and unreasonable requests, including a request for videos of the Plaintiff performing sit-ups. As a result of this, Plaintiff started to feel uncomfortable.

14. As a result of the ongoing discomfort caused by the Defendant's actions, Plaintiff requested the termination and release of the three contracts with Defendant Martínez Lebrón on January 20, 2019, seeking to resolve the matter amicably.

15. Following Plaintiff's request for termination of the Contracts, Defendant Martínez Lebrón responded by directing insults and using offensive language towards the Plaintiff.

16. During this same period, Plaintiff received an email from Defendant Martínez Lebrón demanding payment of $23,548.00, along four (4) songs of Defendant's choosing to be delivered in a term of three (3) months.

17. In response, Plaintiff issued payments to Defendant in the form of checks on the following dates in 2019:

    a.  February 26 - $5,888.00

    b.  March 21 - $5,888.00

    c.  April 22 - $5,886.00

    d.  April 30 - $5,886.00

18. Plaintiff paid the total amount of $23,548.00 as demanded and provided the four (4) songs agreed as part of the release.

19. On June 4, 2019, Plaintiff received an email from the Defendant Martínez Lebrón officially releasing him from the three (3) contracts under Update Music. As a result, Plaintiff was no longer bound by any contractual obligations to Update Music. **See Exhibit #1**.[1]

20. On June 12, 2020, Plaintiff signed an exclusive management, presentation and editorial contract with Mr. Juan Carlos Monserrate and Mr. Edwin Prado Galarza.

21. During this time, Mr. Monserrate and Mr. Prado allegedly planned to sell the Plaintiff's Contract to another person for the sum of $200,000.00.

22. On June 29, 2020, Defendant Martínez Lebrón approached Plaintiff to purchase four (4) compositions. Defendant subsequently sent Plaintiff a document commiting to pay $4,000.00 for the compositions. This action further demonstrated that Plaintiff did not have any active contractual agreement with the Defendant's company.

23. Between February and March 2021, Defendant Martínez Lebrón made a call to Plaintiff requesting music on behalf of the artist known as Ozuna. Plaintiff subsequently provided a composition titled "*Borracha*", which was reportedly well received by Ozuna. Following this, Defendant and Ozuna contacted the Plaintiff via FaceTime to offer him a contract. During this call, Mr. Martínez Lebrón suggested that Plaintiff transfer his contract to Ozuna. Plaintiff expressed surprise and confusion at this suggestion, as he was not affiliated with Defendant's company and had no existing contractual agreement with him.

24. The following day, Plaintiff informed Defendant Martínez Lebrón that he already entered an exclusive contract with Mr. Monserrate and Mr. Prado. To which, Defendant responded that it could not be possible, claiming the contract signed on September 24, 2018, was still

---

[1] All exhibits original language are Spanish, therefore attached to each one are the official English translation and the certification and the original Spanish document.

in effect and that he would contact Mr. Prado regarding the matter. Plaintiff, surprised and confused, was unsure on how to respond, particularly given that he had received a release from the contracts with Defendant on June 4, 2019.

25. Plaintiff attempted to clarify Defendant's claims by contacting Mr. Prado but was unsuccessful. Plaintiff visited Mr. Prado's office, where security personnel informed him that he was not welcome there. The damages caused by the Defendant's actions became evident, as they severed the professional relationship between Mr. Prado and the Plaintiff.

26. Mr. Monserrate and Mr. Prado never contacted Raven Torres Torres, leaving him under the impression that they had put an end to the Agreement entered into on June 12, 2020.

27. As a result, the Contract between Mr. Monserrate and Mr. Prado with the Plaintiff was never executed.

28. On April 26, 2021, Raven Torres Torres received a call from Defendant Martínez Lebrón, during which Defendant spoke in a highly threatening tone. During the call, Defendant sent Plaintiff a document via WhatsApp titled "*Adendum para Acuerdo y Compromiso de Contrato Existente*".[2] **See Exhibit #2.**

29. Plaintiff was unable to confirm the validity of the alleged "agreement" despite attempting to consult with multiple attorneys, but their fees were very high. Under fear and threat, Plaintiff signed the document "*Adendum para Acuerdo y Compromiso de Contrato Excistente*".

30. The "*Adendum para Acuerdo y Compromiso de Contrato Excistente*" imposed the following obligations on Raven Torres Torres: payment of $75,000.00, the delivery of

---

[2] The grammatical error in the title of this document is quoted verbatim as it appears in the original document to preserve accuracy.

fifteen (15) songs for exclusive administration by Update Music, assignment of five percent (5%) of all composer's rights in future songs created by Raven Torres Torres to Mr. Martinez Lebron, and administration by Update Music's publisher of all songs created by Raven Torres Torres between 2019 and 2021.

31. Although the aforementioned document does not constitute a valid contract, Raven Torres Torres felt compelled to fulfill the 'obligations' imposed upon him of assigning the five percent (5%) composer's share to Roberto Martinez Lebron in the songs created by Raven Torres Torres Torres, all songs created by Raven Torres Torres Torres from 2019 to 2021 were assigned to be administered by Update Music's publisher, and delivered more than the fifteen (15) songs requested for 100% administration by Update Music.

32. The compositions delivered by the Plaintiff are:

- Si te veo - Arcángel ft Jay Wheeler, Miky Woodz

- Na de eso - Arcángel ft Nicky Jam, Manuel Turizo

- Todo caro - Arcángel ft Nio & Casper

- No quiere novio - Arcángel ft Omy de Oro, Kevvo

- Enfermo - Arcángel ft Fátima, Brray, Tokischa, Kiko

- Miami Rmx - Omy de Oro ft Ñejo, Arcángel, Darell, Kevvo

- Somos así - Anuel

- Hora y lugar - Lunay ft Boza, Rusherking

- Epapale - Lunay

- Tus labios - Zion & Lennox

- Whattsup - Dalex ft Bryant Myers & Arcángel

- Labios rosados - Dalex ft Wisin & Yandel

- Isla desierta - Ozuna

- Curarme el alma - Ozuna

- Acuarela - Ozuna

- Una nota - Cosculluela ft Nicky Jam

- Que lío - Natti Natasha

33. Despite Plaintiff complying with Defendant Martínez Lebrón's demands, Defendant allegedly continued to issue threats and raise his voice in an intimidating manner during subsequent calls with Plaintiff.

34. On one occasion, Defendant Martínez Lebrón called Plaintiff, yelling at him and demanding that the Plaintiff record a voice note falsely admitting that he owed the Defendant songs, had failed to deliver them due to irresponsibility, and required the Defendant's help. Defendant threatened to damage Plaintiff's reputation in the music industry, revoke rights to certain songs, and prevent other artists from accepting Plaintiff's music if he didn't comply. Under duress and intimidation, Plaintiff asserts that he recorded voice notes acknowledging fault and asking for help with the songs, despite these statements being untrue and made solely to appease Mr. Martínez Lebrón's demands.

35. Over the course of several months, Defendant Martínez Lebrón persisted in making threatening phone calls and demanding additional songs from the Plaintiff.

36. Defendant Martínez Lebrón informed Plaintiff of the possibility of securing a publishing deal. In response, Raven Torres Torres attempted to explore more favorable options; however, he was unsuccessful because the Defendant interfered, prohibiting outside parties

from advising the Plaintiff regarding the publishing deal.

37. At the beginning of 2022, Defendant Martínez Lebrón demanded that Plaintiff travel to Miami, Florida, to meet with the publisher PeerMusic III, Ltd. ("PeerMusic"). Plaintiff complied  and traveled to Miami, where he met Julio Vague. However, Plaintiff was excluded from any discussions and was instructed to wait outside while Defendant and Mr. Vague conducted their meeting.  Following the meeting, Defendant became aggressive and threatened the Plaintiff, stating that if Mr. Torres opposed him, he would *'meet the devil'*.

38. In May 2022, PeerMusic invited Defendant Martínez Lebrón and Plaintiff to their studio for a composition session. During this time, Defendant met with Julio Vague again; however, no substantive discussion took place.

39. On August 12, 2022, PeerMusic delivered the Contract. Shortly thereafter, Defendant Martínez Lebrón called the Plaintiff in a threatening manner, demanding that he sign it immediately. Defendant warned Plaintiff that if he refused to sign, no one in the industry would work with him again. Plaintiff further claims that Defendant did not allow him to review the contract with legal counsel, leading him to sign the Agreement under duress.

40. The PeerMusic Contract was valued at $400,000.00, of which Defendant Martínez Lebrón would receive $200,000.00 as his share.

41. Plaintiff asserts that, from the $400,000.00 contract, he only received $75,000.00 from Defendant. Plaintiff further claims that Defendant misled him, stating that the remaining $125,000.00 was allocated to Bad Bunny songs on Defendant's catalog which he published under Update Music.

42. Plaintiff asserts that the payment of $75,000.00 was delayed by several weeks. Upon

receiving the funds, Defendant Martínez Lebrón called Plaintiff in a threatening manner telling him to deposit $15,000.00, claiming that it belonged to Defendant as compensation for closing the deal with PeerMusic.

43. Plaintiff complied, resulting in only receiving $60,000.00 of the $200,000.00 he was entitled to receive under the PeerMusic deal.

44. Over time, Plaintiff was able to meet with representatives of PeerMusic, who confirmed that the statements made by the Defendant were false. They clarified that the Contract involved four parties and that the majority of the funds were allocated not only to the catalog but also as an investment in Raven Torres Torres' future revenue potential, given his extensive portfolio of over fifty (50) songs with established artists. Furthermore, PeerMusic confirmed that there were no Bad Bunny songs under that publishing agreement.

45. Plaintiff asserts that he delivered over one hundred fifty (150) compositions to Update Music in compliance with the distribution management agreement associated with PeerMusic. However, Plaintiff alleges that Defendant Martínez Lebrón has failed to utilize these compositions to fulfill the terms of the PeerMusic contract.

46. Plaintiff states that he did not hear from Defendant Martínez Lebrón for more than six (6) months following the delivery of the compositions. When Plaintiff attempted to communicate with Defendant to inquire about the status of the compositions intended for PeerMusic, Defendant responded negatively, stating "I do not have time to listen to you".

47. Due to this, Raven Torres Torres decided to tell Mr. Martínez Lebrón that he did not want to continue in this manner and that they should settle things the good way. Mr. Martínez

Lebrón responded with insults and threats that he would close all the doors for him in the music industry and that he would give him the release for $75,000.00.

48. Plaintiff, discouraged and not knowing what else to do, decided to try to contact a lawyer to see if everything that Defendant Martínez Lebrón was asking for was correct in law.

49. Therefore, Plaintiff retained the professional services of attorney Carliz De La Cruz Hernández to review his case.

50. On April 15, 2024, Ms. De La Cruz sent an email to Defendant Martínez Lebrón indicating that any agreement with Plaintiff Raven Torres Torres was null and void. **See Exhibit #3**.

51. That same day, Defendant Martínez Lebrón responded in a lengthy email to Ms. De La Cruz in a haughty and disrespectful manner that it was not like that, among other things. **See Exhibit #4**.

52. Later that night, in response to an email correspondence from Plaintiff's attorney, Defendant Martínez Lebrón sent Torres a message via WhatsApp claiming that Plaintiff did not provide his attorney with all the information. He also stated that Plaintiff had received funds under an existing editorial contract that allegedly allowed him to purchase a house. In the message, Defendant mocked the claims of intimidation raised by Plaintiff's attorney in said correspondence (See Exhibit #3, page 3 p. 1), sarcastically questioning whether the Plaintiff had also signed the editorial contract "under intimidation". He further stated that the Plaintiff was solely responsible for repaying the funds, while warning any damages Defendant Martínez Lebrón might incur would be included in a forthcoming lawsuit, which he assured would proceed regardless of the time required. Additionally, Defendant explicitly prohibited Plaintiff from releasing music or engaging in business

dealings with third parties, reinforcing his intent to control Plaintiff's professional opportunities and restrict his ability to work. This communication reflects a pattern of mockery, coercion, intimidation, and interference with Plaintiff's business and contractual relationships.

53. The Plaintiff refrained from taking action for an extended period because he feared that Defendant Martínez Lebrón would further damage his reputation within the music industry, thereby jeopardizing his ability to secure work. Despite his efforts to avoid conflict, Defendant Martínez Lebrón's conduct left Plaintiff unable to pursue employment opportunities, effectively halting his career and causing significant financial and emotional harm.

54. As a result of Defendant Martínez Lebrón's actions, people in the music industry have not been willing to work with the Plaintiff. This situation has caused severe emotional and mental distress, leaving the Plaintiff frustrated, drained, and unable to move forward. He has been unable to sleep at night due to the overwhelming stress of navigating this legal conflict and being forced to face someone who has continuously treated him poorly and intimidated him. Plaintiff fears the repercussions of confronting Defendant Martínez Lebrón, who is a person of significant wealth and power and is aware of where Torres' family resides. These circumstances have led to the Plaintiff suffering depression and to lose the ability to pursue his passion for music, turning his career into a nightmare. He has been forced to rely on his savings and has found it increasingly difficult to seek alternative employment.

55. Over the years, Plaintiff has worked on various projects for Defendant Martínez Lebrón

without receiving compensation. On multiple occasions, Defendant instructed Torres to record voice notes based on his specific instructions. These recordings were made under coercion, with Defendant Martínez Lebrón using them to manipulate Plaintiff and maintain control over him.

56. Since then, Defendant Martínez Lebrón has taken deliberate steps to prevent Plaintiff from working with others. He has sabotaged Torres' career by interfering with opportunities in the music industry, spreading defamatory statements about him to singers, producers, and other professionals, and damaging Plaintiff's reputation in the music market.

57. Defendant Martínez Lebrón has also contacted numerous individuals in the urban music industry, warning them to not collaborate with Plaintiff and threatening to block projects if they do. Due to his influence and reputation as a difficult individual to oppose, people have chosen to avoid working with Plaintiff, fearing professional repercussions.

58. On November 23, 2024, Defendant Martínez Lebrón sent a message to the Plaintiff demanding $50,000.00 in exchange for granting a release, further demonstrating his intent to use economic leverage to control Plaintiff's ability to work.

59. On January 20, 2025, Defendant Martínez Lebrón sent Plaintiff a voice note via Instagram reminding the Plaintiff of the existent commitment with the editorial company (referring to PeerMusic) tied to the advance payment. Defendant Martínez Lebrón alleged that he personally acted as a guarantor and co-debtor for Plaintiff's catalog because Plaintiff lacked sufficient assets to secure the advance independently. In the same message, Defendant stated that Plaintiff was still bound by the terms of the agreement and disparagingly referred to Plaintiff's attorney as "your crazy lawyer", suggesting that she had provided

Plaintiff with inaccurate legal advice. He further demanded that he pay to secure a release from the agreement, reflecting continued effort to exert financial and professional control over Plaintiff.

60. Plaintiff is unsure of why Defendant is bringing this up given that he has provided compositions to the Defendant to fulfill his obligations with PeerMusic.

61. There have been allegations that Defendant Martínez Lebrón has carried out these predatory practices with other artists. This assertion highlights a potential pattern of behavior that may warrant further investigation during the discovery process.

62. Since April 2024 to the present, Defendant has engaged in defaming Plaintiff by informing other artists and producers in the urban music industry that Plaintiff is a bad payer, breaches contracts, and should not be worked with. These statements have caused economic damages to the Plaintiff, as he has been unable to secure work in the industry where he has historically earned income, additionally causing him moral damages.

63. Defendant have continuously and persistently harassed Plaintiff through unsolicited and unwarranted messages, despite Plaintiff's clear and repeated attempts to disengage. This harassment has included direct messages and repeated attempts to engage Plaintiff through third parties. Defendants' behavior has created a hostile and distressing environment, interfering with Plaintiff's personal and professional life. These ongoing acts of harassment further demonstrate Defendants' malicious intent to cause Plaintiff emotional distress, damage his reputation, and exert undue pressure on him within the industry.

64. We take the threats from the Defendant very seriously, as the judicial record of the Puerto Rico Judicial Branch includes several cases where the Defendant has been accused of

threatening offenses and other violent crimes.

65. Therefore, Plaintiff is entitled to recover damages and to have the document titled "*Adendum para Acuerdo y Compromiso de Contrato Existente*" with Defendants declared null and void.

## FIRST CAUSE OF ACTION
## NULL AND VOID CONTRACT

66. Plaintiff realleges paragraphs 1 through 65 as if fully set forth herein.

67. Pursuant to Art. 1237 of the *Puerto Rico Civil Code of 2020* ("*PRCC*"), a contract is perfected when the parties manifest their consent regarding its object and cause, except in those cases where the fulfillment of a solemn formality is required. 31 L.P.R.A. § 9771.

68. One such formality applies to service contracts, which require that the provider be obligated to render a service **upon payment of a price**. *Id*., § 10291. (Emphasis supplied).

69. Moreover, Art. 342 establishes that a legal transaction is void under any of the following circumstances: (a) if the object, cause, or consent are nonexistent; (b) if the object or cause is illicit; (c) if it lacks the formalities required by law for its validity; or (d) if it is contrary to mandatory law, morality, or public order. *Id*., § 6312.

70. Any interested party who has not acted in bad faith to obtain a benefit may request the declaration of invalidity of a null legal transaction. *Id.*, § 6313.

71. On April 26, 2021, Plaintiff Raven Torres Torres signed, under intimidation and threat, a document titled "*Adendum para Acuerdo y Compromiso de Contrato Existente*". However, this document fails to specify which previous contract it allegedly modifies. This reference is ambiguous and misleading because, at the time of signing, Raven Torres Torres no longer had a valid or enforceable agreement with Update Music.

72. This document imposes unilateral obligations solely on the Composer, Raven Torres Torres, without any reciprocal obligations on Update Music, thereby failing to meet the essential contractual requirements under Puerto Rico law.

73. Raven Torres Torres signed the document under coercion and undue influence. Specifically, Update Music representative explicitly stated that failure to sign would result in blacklisting within the industry and severe professional and financial consequences. At the time of signing, he was not given the opportunity to consult with independent legal counsel, and he reasonably believed that refusing to sign would result in economic retaliation and harm to his career.

74. Since 2021, due to fear and coercion, Raven Torres Torres has delivered over one hundred fifty (150) compositions to Update Music, despite the fact that no valid contract exists between the parties.

75. Defendants exercised significant control over key industry relationships, payment structures, and publishing rights, making their threats of blacklisting and economic retaliation credible and coercive.

76. Critically, this so-called "Addendum" lacks essential terms and conditions necessary to form a valid contract. Among other deficiencies, it:

    a.  Fails to specify a clear object or purpose.

    b.  Does not establish consideration or obligations for Update Music.

    c.  Was signed under coercion, which invalidates the Plaintiff's consent.

77. The absence of a defined contractual object, the one-sided nature of the obligations imposed, and the lack of valid consent further confirm the nullity of the purported

agreement.

78. Under the *Puerto Rico Civil Code of 2020* and relevant jurisprudence, the alleged contract between Plaintiff and Defendants was never perfected. Therefore, the document titled "*Adendum para Acuerdo y Compromiso de Contrato Excistente*" must be declared null and void, as it fails to meet the fundamental legal requirements of object, cause, and consent necessary to create a contractual obligation.

79. In the alternative, Art. 1248 of the *PRCC*, classifies certain agreements as contracts of adhesion when one party is forced to accept prearranged terms without negotiation. 31 L.P.R.A. § 9802. The provisions of an adhesion contract must be interpreted against the drafting party and in favor of the party who was compelled to accept its terms. *Id.*

80. Accordingly, the provisions of the document titled "*Adendum para Acuerdo y Compromiso de Contrato Excistente*" must be construed in a manner that is unfavorable to Plaintiff.

## SECOND CAUSE OF ACTION
### DAMAGES & PAIN AND SUFFERING; PUNITIVES DAMAGES; DEFAMATION

81. Plaintiff re-alleges paragraphs 1 through 80 as if fully set forth herein.

82. The acts and omissions of Defendants, as previously described, have caused Plaintiff substantial losses to his reputation, goodwill, and commercial credibility, significantly impacting his ability to collaborate with other artists and continue his professional trajectory in the entertainment industry.

83. Defendants are jointly and fully liable for the damages suffered by Plaintiff under Art. 1536 of the *PRCC*, which establishes that any person who, by fault or negligence, causes damage to another is required to compensate for such damage. 31 L.P.R.A. § 10801.

84. Furthermore, Art. 1538 of the *PRCC* establishes that:

> The reparation of damages is made in money, through specific reinstatement or a combination of the above remedies, at the option of the injured party, provided there is no duplication of compensation.
>
> **However, when the act or omission constitutes a crime, is done maliciously or with grave disregard for the life, safety and property of others, the judge may impose additional compensation not exceeding the amount of the damage caused.** *Id*., § 10803 (Translation in English and emphasis supplied).

85. The unlawful acts of Defendants were willful, wanton, malicious, oppressive, and committed with reckless disregard or deliberate indifference to Plaintiff's constitutional rights. Defendants intentionally sought to harm Plaintiff's professional standing by making false, misleading, and damaging statements and obstructing his career opportunities, thereby justifying an award of punitive damages in an amount no less than $150,000.00.

86. On the other hand, Art. 1539 of the *PRCC* establishes joint and several liability among joint tortfeasors. Specifically, the article states that "[w]hen several persons cause damages by independent acts of fault or negligence, the liability towards the injured party is joint and several without prejudice to the right of equalization among the co-causers." *Id*., § 10804. (Translation in English supplied).

87. Defendants' actions were not only negligent but also intentional, willful, deliberate, and committed with the intent to cause harm to Plaintiff's professional and personal reputation.

88. Plaintiff has suffered profound psychological distress, emotional trauma, and reputational harm due to Defendants' acts, including deliberate efforts to blacklist him within the industry, spread misinformation about his professional reliability, and damage his ability to secure work and publishing opportunities.

89. Defendants acted with full knowledge that their actions would cause Plaintiff grave and

irreparable economic, emotional, and reputational injury. By leveraging their industry influence, Defendants engaged in a pattern of retaliatory conduct aimed at silencing Plaintiff and deterring him from challenging their unlawful practices.

90. As a direct result of Defendants' actions, Plaintiff has suffered economic losses, emotional distress, and reputational harm, including pain and suffering, which are estimated in an amount no less than $150,000.00, pursuant to the *Puerto Rico Civil Code*.

91. Claims for defamation under Puerto Rico law arise from Section 8 of Article II of the *Constitution of the Commonwealth of Puerto Rico* and Puerto Rico's General Tort Statute.

92. Section 8 of Article II of the *Constitution of the Commonwealth of Puerto Rico* guarantees that "[e]very person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life." *Puerto Rico Const.* Art. II, § 8. This constitutional guarantee "provides a right of action without enabling legislation." *Aponte v. Calderón*, 284 F.3d 184, 197 (1st Cir. 2002). (citing *Porto v. Bentley P.R., Inc.*, 132 P.R. Dec. 331, 343, 1992 Juris P.R. 175 (1992)). To interpret these sources, the Puerto Rico Supreme Court follows the common law tradition. *Id*.

93. Claims for defamation encompass both written (libel) and spoken (slander) forms.

94. The boundaries of these safeguards for a person's honor and reputation are defined by the First Amendment's protections for freedom of speech. The First Amendment provides in the relevant part: "Congress shall make no law abridging [...] the freedom of speech." *U.S. Const.* Amend I. This "free speech clause" of the First Amendment fully applies to Puerto Rico. See *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 148 n. 1 (1993).

95. In Puerto Rico, the tort of defamation can be either intentional or negligent, depending on

whether the defamed individual is a private or public figure. *Segarra v. Banco Popular, Inc*., 421 F. Supp. 2d 452, 458 (D.P.R. 2006), aff'd sub nom. *Segarra-Jimenez v. Banco Popular de Puerto Rico,* 235 F. App'x 2 (1st Cir. 2007).

96. Plaintiff, Raven Torres Torres, is a professional within the entertainment industry. While he is known within industry circles, he does not hold the level of widespread public notoriety that would classify him as a general public figure. Accordingly, Plaintiff is a private figure for the purposes of this defamation claim and must only establish that Defendants' statements were false, defamatory, and made negligently

97. A private figure alleging defamation needs to prove: (1) that the information is false, (2) that the plaintiff suffered real damages, and (3) that the publication was negligent. *Ayala Gerena v. Bristol Myers-Squibb Company*, 95 F.3d 86, 98 (1st Cir. 1996) (citations omitted).

98. Defendants made and circulated false and defamatory statements about Plaintiff, including but not limited to allegations that Plaintiff was unprofessional, unreliable, and unfit for work in the entertainment industry. Defendants falsely represented to industry professionals, collaborators, and business partners that Plaintiff was blacklisted, damaging his ability to secure work, publishing deals, and professional opportunities. These statements were made with actual malice and reckless disregard for the truth, as Defendants knew or should have known that such claims were false. As a direct result, Plaintiff suffered reputational and economic harm.

99. Plaintiff, Raven Torres Torres, was the target of defamatory and false statements made by Defendants. These statements were not only false but were made with actual malice,

reckless disregard for the truth, and a clear intent to harm Plaintiff's standing in the industry.

Defendants sought to discredit Plaintiff within the industry, effectively damaging his

professional reputation and causing financial harm. Under Puerto Rico case law, damages

of both a moral and economic nature must be compensated. Plaintiff's damages for

defamation are estimated in an amount no less than $75,000.00.

### THIRD CAUSE OF ACTION
### ACT NO. 55-2012, PUERTO RICO MORAL RIGHTS ACT
### (31 L.P.R.A. § 1401j et seq.)

100.    Plaintiff re-alleges paragraphs 1 through 99 as if fully set forth herein.

101.    Act No. 55-2012, the *Puerto Rico Moral Rights Act*, protects an author's moral

rights over their creative works, ensuring their right to attribution and integrity.

102.    Pursuant to Act No. 55-2012, moral rights are exclusive rights of an author over his

work that exist by virtue of the very personal relationship between the author and his work.

31 L.P.R.A. § 1401j.

103.    An author's moral rights include: right of attribution (recognition as the creator of

the work) and right of integrity (protection against unauthorized modifications or

distortions of the work). *Id*.

104.    "Infringement of moral rights entitles the author or his successors in title to seek

temporary or permanent injunctions to vindicate his rights, to compensation for damages

and to obtain financial compensation." *Id*. (Translation in English supplied).

105.    Plaintiff, Raven Torres Torres, is the sole author and creator of the original musical

compositions submitted to Defendants. These compositions are protected works under Act

No. 55-2012, granting him exclusive moral rights over them.

106.     Defendants violated Plaintiff's moral rights by failing to provide proper attribution for his work. Specifically, Defendants:

- Refused to credit Raven Torres Torres as the author of his compositions, effectively erasing his creative contribution.

- Misrepresented or omitted his authorship, depriving him of recognition, potential earnings, and professional opportunities, thereby harming his career as a composer.

107.     Defendants' actions directly violate Act No. 55-2012, which entitles the Plaintiff to seek injunctive relief, monetary damages, and compensation for the harm suffered due to Defendants' infringement of his moral rights. Plaintiff's damages for the violation of Act No. 55-2012, *Puerto Rico Moral Rights Act* are estimated in an amount no less than $100,000.00.

108.     Plaintiff is also entitled to attorneys' fees and costs as permitted under Act No. 55-2012. *Id*., § 1401s.

## FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT

109.     Plaintiff re-alleges paragraphs 1 through 108 as if fully set forth herein.

110.     Defendants were unjustly enriched by benefiting from Plaintiff's **null and void** "contract" ("*Adendum para Acuerdo y Compromiso de Contrato Excistente*") and his **unpaid work**, including the creation and production of musical compositions that generated revenue.

111.     Art. 1526 of the *Puerto Rico Civil* Code provides the following on unjust enrichment: "[i]f a person, without just cause, **enriches himself at the expense of another, he is obliged to compensate him** for the corresponding decrease in assets to the extent of

his own enrichment, whether this comes from the obtaining of an advantage or the avoidance of a detriment". 31 L.P.R.A. § 10771. (Translation in English and emphasis supplied).

112.     The doctrine of unjust enrichment is a fundamental principle of equity in Puerto Rican law, ensuring that no party benefits unfairly at another's expense. As the Puerto Rico Supreme Court explained: "An action for unjust enrichment is distinct from an action for damages for wrongful acts." *Ortiz Andújar v. E.L.A.*, 122 D.P.R. 817, 825 (1988). (Translation in English supplied).

113.     Compensation under the doctrine of unjust enrichment is applicable when the following elements are present: (a) existence of an enrichment; (b) a correlative impoverishment; (c) connection between impoverishment and enrichment; (d) lack of a cause that justifies the enrichment; and (e) inexistence of a legal precept that excludes the application of unjust enrichment. In this case, all these elements are present. See, 31 L.P.R.A. § 10771.

114.     In this case, all five elements are met:

- Defendants were enriched by retaining revenue from Plaintiff's work without compensation.

- Plaintiff was impoverished because his labor and intellectual property generated profits that Defendants wrongfully withheld.

- The connection is direct—Defendants used Plaintiff's compositions, yet failed to compensate him.

- There is no valid legal justification—no contract, agreement, or law authorizes Defendants to withhold Plaintiff's earnings.

- No statute excludes unjust enrichment claims here—thus, the doctrine fully applies.

115.    Defendants knowingly and willfully diverted money generated from Plaintiff's work, misappropriating royalties and revenue that rightfully belonged to him.

116.    Alternative Relief: Should this Honorable Court find that any other causes of action do not apply, it must still award Plaintiff restitution for the unjust enrichment Defendants obtained at his expense, which is estimated to be in an amount of no less than $200,000.

117.    There is no legitimate dispute that Defendants unjustly enriched themselves by exploiting Plaintiff's compositions without compensating him. Equity and justice demand that they return all unlawfully obtained funds to Plaintiff.

## <u>FIFTH CAUSE OF ACTION</u>
### TORTIOUS INTERFERENCE

118.    Plaintiff re-alleges paragraphs 1 through 117 as if fully set forth herein.

119.    Art. 1536 of the *Puerto Rico Civil Code* allows an action for tortious interference by third parties with another's contractual obligations. 31 L.P.R.A. § 10801. See also, *Gen. Office Prods. v. A.M. Capen's Sons*, 115 D.P.R. 553, 558 (1984) (Explaining, Art. 1802 of the old *Civil Code*, equivalent to Art. 1536 of the *Puerto Rico Civil Code of 2020*, "allows, like its equivalents in Spanish and French law, the action for tortious interference with the contractual obligations of third parties") (Translation in English supplied). In other words, the system recognizes an action in damages against a third party who, with quasi-delictual or negligent intent, interferes with the contractual relations of another.

120.    To recover for tortious interference under Puerto Rico law, plaintiff must establish "(1) the existence of a contract between two or more parties, (2) interference with that contract by the defendant, (3) 'fault' on the defendant's part, (4) damage to the plaintiff, and (5) a nexus between the plaintiff's damage and the defendant's fault." *New Comm Wireless*

*Servs., Inc. v. Sprintcom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) (citing *Gen. Office Prods. Corp.*

*v. A.M. Capen's Sons, Inc*., supra).

121.     On the other hand, Art. 1538 of the *PRCC* provides that, as a general rule, "[t]he

reparation of damages is made in money, through specific reinstatement or a combination

of the above remedies, at the choice of the injured party, provided that there is no

duplication of compensation. However, when the act or omission constitutes a crime, is

done maliciously or with grave disregard for the life, safety and property of others, the

judge may impose additional compensation not exceeding the damage caused." 31

L.P.R.A. § 10803.

122.     Plaintiff currently has a valid and enforceable contract with PeerMusic (¶39). The

Agreement between PeerMusic and Plaintiff obligated Plaintiff to compose and write the

music and/or lyrics of original musical compositions exclusively and during the period of

the Agreement, for and on behalf of PeerMusic.

123.     However, Defendants intentionally and knowingly interfered with Plaintiff's

Contract with PeerMusic by engaging in a deliberate campaign of defamation and

professional obstruction. Defendants spread false and damaging statements about Plaintiff

within the music industry, tarnishing his reputation and credibility. As a direct result of

these defamatory actions, Plaintiff has been prevented from securing collaborations and

opportunities necessary to fulfill his contractual obligations with PeerMusic. Furthermore,

Defendants have actively discouraged and blocked other industry professionals from

working with Plaintiff, thereby further obstructing his ability to perform under his existing

contract and secure new agreements within the industry.

124.     Defendants' actions were willful and malicious, as they were fully aware of

Plaintiff's exclusive contractual obligations to PeerMusic. Despite this knowledge, Defendants deliberately sought to interfere with and disrupt Plaintiff's contractual rights in an effort to gain leverage in the industry and diminish Plaintiff's standing.

125.     As a direct result of Defendants' tortious interference, Plaintiff has suffered lost profits amounting to no less than $100,000.00, as well as additional financial losses due to reputational harm and lost business opportunities. Defendants' interference also continues to negatively impact Plaintiff's ability to establish and maintain professional relationships within the music industry.

126.     Defendants are jointly and severally liable for all damages caused by their actions, including compensatory damages, lost profits, reputational harm, and any additional relief deemed appropriate by this Court. Plaintiff respectfully requests that this Honorable Court declare that Defendants tortiously interfered with Plaintiff's contractual relationship with PeerMusic and award all available remedies, including damages and equitable relief.

## SIXTH CAUSE OF ACTION
### ATTORNEY'S FEES

127.     Plaintiff re-alleges paragraphs 1 through 126 as if fully set forth herein.

128.     Defendants are liable for pre-judgment interests and attorneys' fees. Attorneys' fees should be imposed in an amount no less than $50,000.00.

## JURY DEMAND

129.     Plaintiff re-alleges paragraphs 1 through 128 as if fully set forth herein.

130.     Pursuant to the Seventh Amendment of the *Constitution of the United States* and Rule 38(b) of the *Federal Rules of Civil Procedures*, Plaintiff requests a trial by jury as to all the issues and claims asserted herein.

## PRAYER FOR RELIEF

**WHEREFORE**, in view of the foregoing, Plaintiff respectfully demand trial by jury, and request and pray for judgment in their favor against Defendants and that this Honorable Court enter judgment as follows:

131.    To declare null and void the "contract" entitled "*Adendum para Acuerdo y Compromiso de Contrato Excistente*" that is the object of this *Complaint* and that it be considered as non-existent, without any effect whatsoever. In the alternative, declare the rescission of the contract that is the object of the lawsuit of epigraph for being a contract of adhesion.

132.    Condemn Defendants to jointly and severally pay to plaintiff Raven Torres Torres the sum of $140,000.00 for the money owed of the PeerMusic agreement, plus the payment of interest.

133.    Ordering Defendants to jointly and severally compensate Plaintiff for all damages Plaintiff has sustained and will sustain, as a result of the negligent, bad faith and/or unlawful acts detailed in the *Complaint*, damages which are estimated as follows:

    a.    to plaintiff Raven Torres Torres a sum not less than $150,000 for the damages and pain suffered by the latter;

    b.    to plaintiff Raven Torres Torres a sum not less than $150,000 for punitive damages;

    c.    to plaintiff Raven Torres Torres a sum not less than $75,000 for defamation;

    d.    to plaintiff Raven Torres Torres a sum of not less than $100,000 for the violation of Act No. 55-2012, *Puerto Rico Moral Rights Act*.

    e.    to plaintiff Raven Torres Torres a sum of not less than $100,000 for tortious interference; and,

f.  to plaintiff Raven Torres Torres a sum of not less than $200,000 for the doctrine of unjust enrichment.

134.  On all claims, awarding Plaintiff's his costs and expenses, including attorney's fees, to the full extent allowed by law, including under the Act No. 55-2012.

135.  Ordering pre-judgment and post-judgment interest according to law in all applicable damages.

136.  Entering such other and further relief as the Court deems just, proper and equitable under the circumstances.

**RESPECTFULLY SUBMITTED.**

In Vega Baja, Puerto Rico, this 10th day of February, 2025.

*__S/CARLIZ DE LA CRUZ HERNÁNDEZ__*
**CARLIZ DE LA CRUZ HERNÁNDEZ**
U.S.D.C.P.R. NO. 308713
PO BOX 2719
Vega Baja, P.R. 00694
Tel. (787) 9237077
Email: carliz@delawpr.com