# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

RAVEN TORRES-TORRES,

Plaintiff,

v.                                          CIVIL NO. 25-1082 (GMM)(HRV)

ROBERTO REVOL MARTINEZ-LEBRON, et al.,

Defendants.

## MEMORANDUM AND ORDER

This is a diversity jurisdiction suit filed by plaintiff Raven Torres-Torres ("Torres" or "Plaintiff") against Defendants Roberto Revol Martinez-Lebron ("Martinez") and Update Music Corp. ("Update Music") (collectively "Defendants") seeking to nullify a contract and to recover damages for defamation, infringement of moral rights under Puerto Rico law, unjust enrichment, and tortious interference. (Docket No. 1). Pending before the court is Torres' "Motion to Disqualify the Law Firm of Defendants." (Docket No. 15). More specifically, Plaintiff moves to disqualify the law firm of Prado, Nuñez & Associates, P.S.C., (hereinafter "Prado Law"), raising a conflict of interest and pressing the argument that disqualification is warranted under ABA Model Rule of Professional Conduct 1.8, or, alternatively, under Rules 1.7, 1.9, and 1.10 of the Model Rules. Subsequently, at a hearing held before me, Torres asserted a new ground for

1

disqualification—Rule 3.7 (Lawyer as Witness). The Defendants opposed the motion to disqualify. (Docket No. 22).

The matter was referred to me by the presiding District Judge for disposition. (Docket No. 18). I held a hearing on the motion on June 5, 2025. (Docket No. 27). For the reasons set forth below, the motion to disqualify is DENIED.

I.     Factual and Procedural Background

I summarize the factual background from the allegations in the complaint but only to provide context to the request for disqualification. Torres is a songwriter who in September of 2018, entered into publishing, management and recording contracts with Martinez and his company Update Music. (Complaint, Docket No. 1, ¶11). Torres avers that he experienced difficulties dealing with Martinez from the start such as receiving threats, witnessing erratic behavior, and being the subject of unreasonable requests. (Id., ¶¶12-13). Due to the alleged ongoing discomfort, Torres requested in January of 2019 the termination of the contracts and to be released from his obligations under them. (Id., ¶14). It is alleged that on June 4, 2019, Torres received an email from Martinez releasing him from his contracts with Update Music. (Id., ¶19).

Relevantly, on June 12, 2020, Torres signed an exclusive management, representation and publication contract with Juan Carlos Monserrate ("Monserrate") and Edwin Prado-Galarza ("Prado"). (Id., ¶20). A few weeks later, Martinez contacted Torres to request four compositions and agreed to pay $4,000. (Id., ¶22). This, the complaint alleges, is evidence that Torres did not have a contractual relationship with Martinez. (Id.). Subsequently, in either February or March of 2021, Martinez contacted Torres requesting a composition for the artist Ozuna, which Plaintiff provided. (Id., ¶23).

2

However, Torres notified Martinez that he had signed the contract with Monserrate and Prado, to which Martinez reacted surprised and claimed that their 2018 contracts were still in effect. (Id., ¶24). Attempts by Torres to contact Prado were unsuccessful. In fact, it is alleged that Torres visited Prado's office and was told by security personnel that he was not welcomed there. (Id., ¶25). Because of the lack of communication, Torres assumed that Monserrate and Prado had put an end to their agreement. (Id., ¶26). Said contract was never executed. (Id., ¶27).

On April 26, 2021, Torres received a threatening call from Martinez. During said call, Martinez sent a document titled in Spanish "Adendum para Acuerdo y Compromiso de Contrato Excistente.[1]" (Id., ¶28). Torres signed this agreement. Nevertheless, he claims that he did so out of fear and due to Martinez' threats. (Id., ¶29). It is also alleged that he was unable to have an attorney look at the agreement before he signed it. (Id.). Thereafter, the complaint alleges that Torres felt compelled to perform under this contract and did so by delivering 15 songs to Update Music. (Id., ¶31). Despite this, Martinez allegedly continued making threats to Torres. (Id., ¶¶33-34). The threats included damaging Plaintiff's reputation in the music industry. (Id., ¶34).

Further, Martinez allegedly interfered with Torres' ability to obtain a publishing deal on his own. (Id., ¶36). Notwithstanding the alleged interference, at the beginning of 2022, there were discussions about a potential publishing deal with PeerMusic III, Ltd., but Torres was excluded from the discussions. (Id., ¶37). A contract was formally

---

[1] The typographical error in Spanish appears in the original document.

3

delivered in August of 2022 and Martinez demanded that Torres sign it immediately and stated that no one in the industry would work with him if he didn't. (Id., ¶39). The complaint further avers that Torres received only $60,000 out of $200,000 of the value of the contract and that he delivered over 150 compositions to Update Music in compliance with his obligations under the PeerMusic agreement. (Id., ¶¶41-45). According to the complaint, Torres failed to use these compositions. (Id., ¶45). After more than six months with no word on the status of the compositions, Torres reached out to Martinez. (Id., ¶46). The latter replied that he did not have time to listen to Torres. (Id.).

Torres expressed to Martinez that he could not continue in that manner and requested release from his obligations and to settle matters amicably. (Id., ¶47). Martinez responded with insults and additional threats that he would close the doors for Plaintiff in the music industry. (Id.). He also said that he would give Torres the release in exchange for $75,000. (Id.). At this point, Plaintiff consulted with an attorney, and through counsel sent a communication to Martinez asserting that their agreement was null and void. (Id., ¶¶49-50). This communication by counsel was disrespectfully dismissed by Martinez who in turn threatened legal actions against Torres. (Id., ¶52). Torres allegedly refrained from taking any actions to avoid conflict effectively halting his career. (Id., ¶53). This, the complaint continues, caused him significant financial and emotional harm. (Id.). It is further alleged that Martinez took deliberate steps to prevent Torres from working with others and that he sabotaged his career. Martinez is alleged to have interfered with Torres' opportunities in the music industry by, among other things, making defamatory statements about him. (Id., ¶¶54-56, 62). Torres requests that the

documents titled "Adendum para Acuerdo y Compromiso de Contrato Excistente" be declared null and void and that he be awarded monetary damages. (Id., ¶65).

The motion to disqualify Prado Law was filed by Torres on May 8, 2025. (Docket No. 15). It was referred to me for disposition the next day, May 9, 2025. (Docket No. 18). Defendants filed their response in opposition on May 27, 2025. (Docket No. 22). I held a hearing on June 5, 2025, at which I listened to oral argument from the parties, and admitted, without objection from Plaintiff, Defendants' Exhibit A.[2] (Docket No. 27). At the conclusion of the hearing, I took the matter under advisement. (Id.).

## II. APPLICABLE LAW AND DISCUSSION

Torres contends that Prado, principal attorney at Prado Law, and who now represents Defendants, was previously involved with him in a business transaction closely connected to the subject matter of this case. (Docket No. 15 at 1). He further claims that Prado Law participated in the negotiation, drafting, and preparation of agreements involving Torres' music rights and professional services, including the agreements that are in controversy in this case. Torres also references the agreement that he signed with Monserrate and Prado for the proposition that, at a minimum, a business-legal relationship was created, and potentially an attorney-client relationship. Plaintiff says that the dual role of Prado Law in facilitating transactions involving him and now representing adverse parties, creates an "unresolvable conflict of interest" under the

---

[2] Exhibit A is the "Exclusive Management, Representation, and Publication Contract" alluded to by Plaintiff in the complaint. The same was submitted in the Spanish language. I granted Defendants 10 days to submit a certified English translation. (Docket No. 27). The same was submitted on June 23, 2025. (Docket No. 32).

5

rules of professional conduct, particularly Rule 1.8, which prohibits a lawyer from entering into a business transaction with a client unless strict conditions are met. Alternatively, Torres argues that he reasonably believed that Prado Law was providing legal advice and guidance and that even if the business relationship between Prado Law and him did not create a full attorney-client relationship, the protections of Rule 1.7 of the model rules (concurrent conflict of interest) are triggered by the adverse representation in this case. At the motion hearing held, Torres raised for the first time that Prado Law should also be disqualified pursuant to Rule 3.7 because Prado could be called as a witness at trial.

The Defendants respond that the motion to disqualify lacks factual and legal basis. First, they argue that no attorney-client relationship ever existed between Torres and any of the attorneys at Prado Law. Second, that any prior interaction between Torres and Prado was purely business or transactional in nature and did not involve providing legal advice, advocacy or representation. Said prior business relationship, Defendants maintain, is not substantially related to the issues in controversy in this case.

Further, according to the Defendants, Torres has failed to establish that he reasonably believed Prado Law was acting as his legal representative at any time relevant to the allegations in the complaint. Defendants additionally contend that the management, representation and publication contract signed by Torres—Exhibit A—was signed by Prado in his capacity as an officer of NG Entertainment, Inc., not as attorney for any party to the agreement. With respect to the issue of Prado being a potential witness, Defendants claim that this argument was waived, and that it fails on the merits

6

in any event because there are other witnesses involved in the transactions that can be the source of information and testimony.

A.      **Legal Standard – Motions to Disqualify**

When presented with a motion to disqualify counsel, a federal district court looks to the local rules enacted by the district court itself. *Smith v. Llamas*, No. CV 24-1547 (ADC), 2025 LX 31894, 2025 U.S. Dist. LEXIS 89212, at *3 (D.P.R. May 9, 2025) (citing *Ashe v. Distribuidora Norma Inc.*, 2012 U.S. Dist. LEXIS 203860, 2012 WL 12995645, at *2 (D.P.R. Sept. 25, 2012)). The District of Puerto Rico has adopted the American Bar Association's Model Rules of Professional Conduct. Specifically, Local Rule 83E provides in pertinent part that "[i]n order to maintain the effective administration of justice and the court integrity, each attorney admitted or permitted to practice before this court shall comply with the standards of professional conduct required by the Model Rules of Professional Conduct … adopted by the American Bar Association." Local Civ. R. 83E(a).

Motions to disqualify are generally disfavored. *See Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc.*, 903 F. Supp. 253, 256 (D.P.R. 1995). This is so because disqualifying a party's chosen counsel is "a serious matter which could not be supported by the mere possibility of a conflict." *Rivera-Molina v. Casa La Roca, LLC*, 546 F. Supp. 3d 108, 110 (D.P.R. 2021). Moreover, Courts are to exercise caution in deciding motions to disqualify because such "motions can be tactical in nature, designed to harass opposing counsel, and … 'the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.'" *Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir. 1984) (quoting Preamble to Model Rules for Professional Conduct). The

7

moving party bears the burden of showing the factual and legal basis that warrants disqualification. *See Estrada v. Cabrera*, 632 F. Supp. 1174, 1175 (D.P.R. 1986) (citing *Evans v. Artek Systems Corp.*, 715 F.2d 788, 794 (2nd Cir. 1983)).

**B.     Conflict of Interest**

"A motion to disqualify an attorney is an accepted and adequate way for a litigant to bring a potential conflict of interest to the Court's attention." *Rivera Molina v. Casa La Roca, LLC*, 546 F. Supp. 3d 108, 110 (D.P.R. 2021). Rule 1.8 of the Model Rules of Professional Conduct, upon which Torres principally relies, provides in general that "[a] lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless" certain conditions are met such as reasonableness of the terms of the transaction, opportunity to seek the advice of independent counsel, and written informed consent by the client. MODEL RULES OF PROF'L CONDUCT R. 1.8(a) (2025). Although cited in passing, Torres also relies on Rule 1.7 [3] which generally prohibits a lawyer from representing a client if said current representation will be adverse to another client, MODEL RULES OF PROF'L CONDUCT R. 1.7 (2025), and Rule 1.9, which forbids representation of a person if such representation will be adverse to a former client in a substantially related matter, or using information related to the representation to the disadvantage of the former client. MODEL RULES OF PROF'L CONDUCT R. 1.9 (2025).

---

[3] I find that Torres' reliance on Rule 1.7 is misplaced because there is no dispute that Prado Law is not "currently" his counsel. "Unlike, for example, Rule 1.9, which specifically refers to lawyers who have 'formerly represented a client,' Rule 1.7 limits the conflicts to those existing between two parties that are currently clients of a lawyer." *Headfirst Baseball LLC v. Elwood*, 99 F. Supp. 2d 199, 206 (D.D.C. 2013). Accordingly, I will not discuss any argument under this rule.

The sine qua non of a violation of these conflict-of-interest rules, is the existence of an attorney-client relationship, either presently, or in the past. *See Polyagro Plastics, Inc.*, 903 F. Supp. at 256 (noting that in the context of a motion to disqualify pursuant to Rule 1.9, the court needed to discern first whether an attorney-client relationship existed). For instance, as the plain language of Rule 1.8 shows, "a lawyer shall not enter into a business transaction with a **client** . . . ." MODEL RULES OF PROF'L CONDUCT R. 1.8(a) (emphasis added); *see also Rivera Molina v. Casa La Roca, LLC*, 546 F. Supp. 3d at 112 (denying motion to disqualify under Rule 1.9 in the absence of evidence that there was an attorney-client relationship.). Thus, based on the above, in order to meet his burden to show that disqualification is warranted under any of these rules, Torres must first establish that an attorney-client relationship existed between him and Prado Law. At oral argument, counsel for Torres conceded that the existence of an attorney-client relationship was a necessary condition to trigger the relied upon rules of professional conduct.

If the court finds the existence of an attorney-client relationship, Plaintiff still must meet the substantially related test, which governs the inquiry into whether disqualification is appropriate in conflict-of-interest cases. *See Starlight Sugar, Inc. v. Soto*, 903 F. Supp. 261, 265 (D.P.R. 1995) (citing *Borges v. Our Lady of the Sea Corp.*, 935 F.2d 436, 439 (1st Cir. 1991)). "[T]he relevant inquiry is whether the subject matter of the two representations is 'substantially related;' could the attorney have obtained confidential information in the first suit that would have been relevant to the second." *Borges*, 935 F.2d at 439-40. Under the substantially related test:

> [T]he first step is to factually reconstruct the scope of the prior representation. Second, the Court must determine whether it is reasonable to infer that the information allegedly given, would have been provided to an attorney involved in the representation of those matters. Lastly, the court must determine whether that information is relevant to the issues raised in the litigation pending against the former client.

*Reyes-Canada v. Rey-Hernandez*, 193 F. Supp. 2d 409, 411-12 (citations omitted).

On the record before me, I find that Torres has not met his burden to show neither the existence of an attorney-client relationship, nor that the subject matter of the two representations (assuming for the sake of argument that an attorney-client relationship existed), are substantially related. Except for a vague and conclusory allegation that Torres "relied on Prado's professional position during those transactions" and that he "reasonably believed Prado Law was providing legal advice or guidance" (Docket No. 15 at 6), there is nothing supporting the argument that an expressed or implied attorney-client relationship existed between him and Prado Law.

For an attorney-client relationship to exist, the purported client must have sought advice or legal representation from the attorney. *Campos-Matos v. Evanstone Ins. Co.*, 208 F. Supp. 2d 170, 173 (D.P.R. 2002) (citing *In re Belen Trujillo*, 126 P.R. Dec. 743, 756-57, 1990 Juris P.R. No. 102 (1990)). The existence of an express attorney-client relationship maybe established by proof of a formal written or oral agreement, payment of fees, or evidence of statements or representations made by either party about the nature of the relationship. *Headfirst Baseball LLC v. Elwood*, 99 F. Supp. 2d at 210; *see also Rivera-Molina v. Casa La Roca, LLC*, 546 F. Supp. 3d at 112. Nonetheless, "[a] party does not need to produce a formal contract or fee payment to establish an attorney-client

10

relationship." *Polyagro Plastics, Inc.*, 903 F. Supp. at 256. A party may show the existence of an implied attorney-client relationship. Indeed,

> [a] fiduciary relationship in which client confidences must be protected may arise from a preliminary consultation by a prospective client with a view to retention of a lawyer, although actual employment does not result. Accordingly, a party may establish an implied attorney-client relationship if (i) the party submitted confidential information to the attorney, and (ii) the party did so with the reasonable belief that his lawyer was acting as the party's attorney.

*Id.* (cleaned up); *see also Sheinkopf v. Stone*, 927 F.2d 1259, 1265 (1st Cir. 1991) (noting that under Massachusetts law, the existence of an implied attorney-client relationship may be proven if certain elements are met).

Here, Torres has not mustered any evidence that he had an express attorney-client relationship with Prado Law. He has not submitted a written agreement, retainer, or other proof to show that Prado or Prado Law expressly agreed to represent him. No evidence has been presented either of attorney's fees paid to Prado Law. Similarly, Torres has failed to show the existence of an implied attorney-client relationship. He has not alleged, let alone proven, that he submitted confidential information to Prado under a reasonable belief that the latter was acting as his lawyer. The circumstances surrounding the contract negotiations, particularly any communications he had with Prado in that context, have not been proffered. And while Torres has tersely claimed that he believed Prado Law was providing legal advice and guidance, he has not put the Court in a position to find that such belief was reasonable or amounts to the formation of an implied attorney-client relationship. "To imply an attorney-client relationship,…the law requires more than an individual's subjective, unspoken belief that the person with whom he is

dealing, who happens to be *a* lawyer, has become *his* lawyer. *Sheinkopf*, 927 F.2d at 1265 (emphasis in original).

The above conclusion is reinforced by the fact that Torres signed the management, representation, and publication contract wherein Prado appears as signatory in his capacity as officer of NG Entertainment, Inc. (Exhibit A at 2, 16, Docket No. 32-1 at 2, 16). Nowhere in said contract is Prado appearing in his capacity as an attorney. What's more, the agreement itself specifies that before signing the same the parties either exercised or waived their right to seek independent legal advice. (Id. at 16). Such language in the agreement suggests that neither Prado nor Prado Law were providing legal services or entering into an attorney-client relationship with any of the persons or entities named in said contract; it was purely a business transaction.

Therefore, because Torres has not established the existence of an attorney-client relationship with Prado or Prado Law, he cannot succeed in any of the variants of his motion to disqualify. The alleged violation to Rule 1.8 fails because any business transaction was not entered into with Torres as "client" of Prado or Prado Law. Likewise, disqualification cannot be premised on a duty breached or potential breach of duty to a former client under Rule 1.9, again, because Torres was never a client of Prado Law.

The motion to disqualify fails, in any event, because even assuming the existence of an attorney-client relationship, the present litigation does not meet the "substantially related" test. Torres has not directed my attention to any specific confidential information obtained in the context of the past purported legal representation that may be used in the current litigation. *See Reyes-Canada*, 193 F. Supp. 2d at 411 ("The purpose of this disqualification rule [Rule 1.9] is to prevent confidential information, from a prior

12

representation, from being used for the benefit of another client who is now the adversary of the prior client."). Torres has also not factually reconstructed the scope of the alleged prior representation and has not shown that information provided to Prado to enable him and others to subscribe the management, representation and publication contract, is significantly relevant or critical to his cause of action of nullification of a different contract with Martinez and the damages he claims to have suffered. At most, the agreement Torres signed with Prado and Monserrate, which was never executed, is a tangential aspect of the factual background of this case. For those reasons, the request for disqualification is unavailing.

**C.      Lawyer as Witness – Rule 3.7**

Torres raised for the first time at the June 5, 2025, motion hearing that disqualification was also warranted on the ground that Prado may be called as a witness at trial. Defendants argue that this argument is waived for failure to bring it in the original motion to disqualify. They also claim that there are witnesses other than counsel Prado that can provide the relevant testimony. At the hearing, counsel for the Plaintiff riposted that the argument was not raised in her motion because at the time it was filed, Prado had not entered a formal notice of appearance in the case. A different attorney from Prado Law had appeared.

Rule 3.7 provides in relevant part that "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client. MODEL RULES OF PROF'L CONDUCT R. 3.7(a) (2025). The

13

burden of showing that a lawyer is a necessary witness rests with the party seeking disqualification. *P.R. Soccer League NFP v. Federación Puertorriqueña de Futbol*, No. CV 23-1203 (RAM), 2025 WL 1080742, 2025 U.S. Dist. LEXIS 69595, at *6 (D.P.R. Apr. 10, 2025). The rule places a higher standard of proof on the movant because "[t]he right to be represented by counsel of choice is an important one, subject to override only upon a showing of compelling circumstances." *Standard Quimica de Venez., C.A. v. Central Hispano Int'l., Inc.*, 179 F.R.D. 64, 66 (D.P.R. 1998) (*quoting Weeks v. Samsung Heavy Industries Co., Ltd.*, 909 F. Supp. 582, 583 (N.D. Ill. 1996)). A lawyer is deemed a necessary witness "when the proposed testimony is relevant, material, not merely cumulative, and unobtainable elsewhere." *P.R. Horse Owners Ass'n, Inc. v. Gaming Comm'n of Gov't of P.R.*, No. 24-01194, 2024 U.S. Dist. LEXIS 135881, 2024 WL 3580629, at *1 (D.P.R. July 30, 2024) (quoting *Deetz Fam., LLC v. Rust-Oleum Corp.*, 16-10790, 2018 U.S. Dist. LEXIS 184773, 2018 WL 5555070, at *1 (D. Mass. Oct. 29, 2018)).

I bypass the issue of waiver of the Rule 3.7 argument because though raised for the first time at the hearing, the Defendants had an opportunity to respond to it, but most importantly, because it fails on the merits even if not waived. Torres has not met his burden of showing that, at this stage, Prado Law should be disqualified because Prado is likely to be a necessary witness at trial. Plaintiff has particularly fallen short of establishing that any testimony by Prado is material and that it cannot be obtained through other identified witnesses. Therefore, disqualification under Rule 3.7 is premature. Nevertheless, "if it later becomes likely' that Prado 'is the only individual with relevant knowledge[,]' Torres' 'renewal of their motion will be in order, but only to

prevent [Prado] from acting as advocate at trial.'" *Standard Quimica De Venez., C.A.*, 179 F.R.D. at 66; *see also P.R. Horse Owners Ass'n, Inc.*, 2024 WL 3580629, at *5 (denying motion to disqualify without prejudice for failure to demonstrate at the pre-trial stage that counsel was a necessary witness to be called at trial.).

### III. CONCLUSION

In view of the above, Torres' motion to disqualify at Docket No. 15 is hereby DENIED.

**IT IS SO ORDERED**

In San Juan, Puerto Rico this 24th day of June, 2025.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE